

FILED

2014 OCT 22 PM 12: 57

U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** |
| Plaintiff, | ) ) ) | CASE NO.: **1: 14 CR 392** |
| v. | ) ) | |
| ROBERT WALKER, | ) ) | JUDGE **JUDGE ADAMS** |
| Defendant. | ) ) ) ) | Title 18, United States Code §§ 1341 and 1343 |

The Grand Jury charges:

### General Allegations

At all times material and relevant to this Indictment:

1. The defendant ROBERT WALKER was a resident of North Royalton, Ohio.

2. The Modification Group, LLC ("TMG") was a for-profit, limited liability corporation organized under the laws of the State of Ohio, and incorporated by ROBERT WALKER. WALKER owned and operated TMG, and he supervised, directed, and approved the actions of TMG and its employees.

3. TMG was previously incorporated under the name RW Investments I, LLC. TMG did business at various times as TMG; The Modification Group 4, LLC; The Modification

2

Group 5, LLC; The Modification Group VI, LLC; US Modification Corp.; and Loan Modification Group. TMG had physical offices located at various times in Broadview Heights, Middleburg Heights, Bedford, Parma Heights, Ravenna, and Cleveland, Ohio.

4. TMG solicited persons who were struggling to pay their home mortgages or had home mortgage loans that were pending foreclosure, and offered to help them improve their financial situation and avoid foreclosure by interceding on their behalf with the lending institution or mortgage servicer and obtaining a modification to their mortgage. TMG held itself out and advertised itself as "specializ[ing] in loan modifications, debt settlements, credit repair, and financial planning services," and having "experienced negotiators that will secure your home with the lowest fixed rate available." TMG claimed it "will eliminate or reposition all late payments back into your loan, bringing the account current, while also lowering your interest rate or payment, making it easier for you to afford."

5. TMG marketed itself nationally, and solicited customers and monies from persons located throughout the United States, including in the Northern District of Ohio, using direct mailings, a website, internet advertisements, radio advertisements, and telephone calls to do so.

## The Scheme to Defraud

6. From in or around January 2009 and continuing through on or about May 2011, in the Northern District of Ohio, Eastern Division, and elsewhere, ROBERT WALKER developed and executed a scheme and artifice to defraud that played on the financial hardships of persons who were struggling to pay their home mortgages.

7. It was part of the scheme and artifice to defraud that WALKER made absolute representations of success in obtaining loan modifications to consumers on TMG's website and in

3

other TMG marketing documents that WALKER then well knew TMG could not keep and had no intention of keeping. Those representations included the following:

> "Are You In A Loan You Can't Afford? We Will Modify It. <u>Guaranteed</u>."
>
> ***
>
> "It doesn't matter what [financial] situation you are in, we have a program to get you back on track."
>
> ***
>
> "Real results, guaranteed."

8. It was further part of the scheme and artifice to defraud that WALKER represented on TMG's website and in other TMG marketing documents that TMG would obtain loan modifications that contained terms more favorable than those of the consumer's existing loan and that the consumer could realistically afford to pay. In particular, WALKER made the following representations, among others:

> (a) TMG "will eliminate or reposition all late payments back into your loan, bringing the account current, while also lowering your interest rate or payment, making it easier for you to afford"; and
>
> (b) "What [TMG] Can Do To Help:
> - Lower interest rates (2-5.5% fixed) giving you a reduction in monthly payments
> - Eliminate or shorten 2nd Lien, and/or lowering overall principle balance
> - Position yourself out of an interest only or adjustable rate mortgage and into a fixed 30 or 40 year payment
> - Eliminate missed payments or push them to the end of the loan"

9. It was further part of the scheme and artifice to defraud that WALKER, through TMG, required customers to pay approximately $1,995.00 or one percent (1%) of the mortgage

balance, typically whichever was greater, up front, before TMG worked on obtaining or obtained a loan modification, and collected such payments via check, money order, credit card, or electronic debit. Customers often made these payments on an installment basis over a short period of time.

10. It was further part of the scheme and artifice to defraud that WALKER directed his employees at TMG to solicit and accept as customers persons for whom WALKER knew, at or about the time of engagement, TMG would not be able to obtain loan modifications on terms that the customers could realistically afford.

11. It was further part of the scheme and artifice to defraud that WALKER, through TMG, required customers to enter into written service agreements that were substantially one-sided, in favor of TMG.

12. It was further part of the scheme and artifice to defraud that WALKER told and directed the persons he employed at TMG to tell potential customers that TMG would refund to the customer 80 percent (80%) of the fee paid to TMG if TMG failed to obtain a loan modification for them. WALKER included this representation in the customer's service agreement contract. In truth and in fact, as WALKER then well knew, this statement was false because WALKER did not generally intend to refund the fees that the customers paid to TMG if TMG was unsuccessful in obtaining a loan modification.

13. It was further part of the scheme and artifice to defraud that WALKER failed to disclose to customers that TMG did not set aside funds to make refund payments to customers in the event that TMG was not able to obtain loan modifications.

14. It was further part of the scheme and artifice to defraud that WALKER failed to disclose to customers that he would use the payments that a given customer made to TMG to pay

5

TMG's operating expenses and pay for his own personal expenditures prior to obtaining a loan modification for that customer.

15. It was further part of the scheme and artifice to defraud that, at the beginning of the relationship, TMG regularly reported to its customers on the progress that TMG was purportedly making toward obtaining a loan modification. After doing so for a short period of time, TMG often sent customers a letter stating that the number of future communications updating them on the status of their loan modification would decrease due to business volume, or otherwise stopped communicating with customers. Thereafter, TMG would frequently refuse to respond to its consumers when they attempted to contact TMG.

16. It was further part of the scheme and artifice to defraud that WALKER, through TMG, prohibited customers from contacting their lending institution or mortgage servicer, and directed customers to send any and all correspondence from their lenders to TMG.

17. It was further part of the scheme and artifice to defraud that TMG often failed to obtain any loan modification for the customer. In some cases, TMG never contacted its customer's lending institution or mortgage servicer to discuss a modification even though the customer had paid substantial monies to WALKER, through TMG, for assistance in obtaining a loan modification in relation to a distressed home mortgage.

18. It was further part of the scheme and artifice to defraud that TMG sometimes obtained "modifications" under terms that were of little or no value to the customers. In such cases, WALKER and his employees at TMG often told customers that TMG had nonetheless successfully obtained a loan modification and refused to refund any part of the fees that the customers had paid to TMG despite requests to do so.

6

19. It was further part of the scheme and artifice to defraud that WALKER and his employees at TMG often created illegitimate reasons that they claimed voided TMG's contract with its customers to avoid refunding the customers' fees when TMG failed to obtain a loan modification. For example, TMG requested that customers repeatedly provide additional documents, often on a monthly basis. In many cases, after waiting a short period, TMG told the customers that he or she had not provided the requested documents quickly enough, and terminated their contracts without a refund. In other cases, TMG terminated customers' contracts without a refund by falsely claiming that the customers had not sent in requested documents, when, in truth and in fact, the customers had already sent such documents to TMG, sometimes sending the same documents to TMG more than one time.

20. It was further part of the scheme and artifice to defraud that after customer's lending institution or mortgage servicer denied a loan modification request, TMG employees often continued to ask that the customer provide additional documents to create the false appearance that the customer's bank was still processing a loan modification request.

21. It was further part of the scheme and artifice to defraud that WALKER, through TMG, told customers who attempted to cancel their contracts, and thus end TMG's involvement in attempting to obtain a loan modification, that doing so was a breach of their contract and therefore voided their right to a refund from TMG.

22. It was further part of the scheme and artifice to defraud that WALKER, through TMG, often refused to issue a refund to a customer for whom TMG had failed to obtain a loan modification unless the consumer filed a complaint with a consumer protection agency.

23. In some situations, TMG customers negotiated loan modifications on their own, directly with their lending institution or mortgage servicer, without any help from or involvement

by TMG, and therefore sought a refund from TMG. It was part of the scheme and artifice to defraud that, in such situations, WALKER, through TMG often falsely took credit for obtaining the modification and refused to issue a refund to the customer.

The Grand Jury further charges:

## COUNTS 1-21
### (Mail Fraud, in violation of 18 U.S.C. § 1341)

24. Paragraphs 1 through 23 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

### The Scheme to Defraud

25. From in or around January 2009 and continuing through in or around May 2011, in the Northern District of Ohio, Eastern Division, and elsewhere, ROBERT WALKER devised and intended to devise a scheme and artifice to defraud consumers who were struggling to pay their home mortgages and to obtain money and property from them by means of false and fraudulent pretenses, representations and promises, to wit: the Scheme to Defraud alleged in paragraphs 6 through 23 of this Indictment.

### The Use of the U.S. Mail

26. On or about the dates listed below, in the Northern District of Ohio and elsewhere, ROBERT WALKER, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, knowingly caused the documents to be delivered by and through the United States mail, according to the directions thereon, including the following matters:

| COUNT | Date | Description of Document | Recipient Initials | Recipient Location |
|---|---|---|---|---|
| 1 | 2/1/2010 | TMG loan modification advertisement | D.M. | Bolingbrook, Illinois |
| 2 | 2/27/2010 | TMG loan modification advertisement | J.J. | Solon, Ohio |
| 3 | 4/1/2010 | TMG loan modification advertisement | B.D. | Palos Heights, Illinois |
| 4 | 6/1/2010 | TMG loan modification advertisement | R.W. | Parma Heights, Ohio |
| 5 | 7/1/2010 | TMG loan modification advertisement | V.K. | Mound, Minnesota |
| 6 | 8/1/2010 | TMG loan modification advertisement | A.L. & D.L. | North Stonington, Connecticut |
| 7 | 9/17/2010 | Letter from TMG requesting additional documents | R.M. & P.M. | Fairview Park, Ohio |
| 8 | 10/25/2010 | Termination letter | T.M. | Lakewood, Ohio |
| 9 | 11/4/2010 | Lulling letter re: reduced communications | A.N. | Haymarket, Virginia |
| 10 | 11/4/2010 | Lulling letter re: reduced communications | D.P. | Orient, Ohio |
| 11 | 11/17/2010 | Termination letter | E.G. | Windham, Connecticut |
| 12 | 11/30/2010 | Termination letter | J.P. | Indianapolis, Indiana |
| 13 | 11/30/2010 | Termination letter | T.M. | Bristolville, Ohio |
| 14 | 12/13/2010 | Termination letter | K.L. | Cleveland, Ohio |
| 15 | 12/22/2010 | Refund denial letter | S.I. | Willow Spring, North Carolina |
| 16 | 12/28/2010 | Termination letter | M.F. | Falls Church, Virginia |
| 17 | 12/29/2010 | Termination letter | E.F. | Pioneer, Ohio |
| 18 | 2/23/2011 | Refund denial letter | M.M. | Streetsboro, Ohio |
| 19 | 3/21/2011 | Refund denial letter | S.F. | North Ridgeville, Ohio |
| 20 | 4/14/2011 | Refund denial letter | J.G. | Eastlake, Ohio |
| 21 | 5/23/2011 | Refund denial letter | S.K. | Cleveland, Ohio |

27. As a result of the foregoing fraudulent scheme, WALKER and his associates convinced more than 90 homeowners, residing in the Northern District of Ohio and elsewhere, to

engage TMG's loan modification services and to pay TMG more than $250,000.00 in fraudulently obtained fees.

All in violation of Title 18, United States Code, Section 1341.

The Grand Jury further charges:

## COUNTS 22-23
### (Wire Fraud, in violation of 18 U.S.C. § 1343)

28. Paragraphs 1 through 23 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

### The Scheme to Defraud

29. From in or around January 2009 and continuing through in or around May 2011, in the Northern District of Ohio, Eastern Division, and elsewhere, ROBERT WALKER devised and intended to devise a scheme and artifice to defraud consumers who were struggling to pay their home mortgages and to obtain money and property from them by means of false and fraudulent pretenses, representations, and promises, to wit: the Scheme to Defraud alleged in paragraphs 6 through 23 of this Indictment.

### The Use of Interstate Wire Communications

30. On or about each of the dates set forth below, WALKER, for the purpose of executing the scheme and artifice to defraud described above, transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, to wit: WALKER caused the following transfers of money, among others, from bank accounts controlled by the following TMG customers and located in the following

states, to bank account number xx-xxxx-8761, maintained by TMG at PNC Bank and located in the Northern District of Ohio, each transmission constituting a separate count:

| COUNT | Date of Wire/ Electronic Funds Transfer | TMG Customer Initials | Location of Transferring Bank | Approximate Amount |
|---|---|---|---|---|
| 22 | 11/12/09 | J.W. | Tennessee | $665.00 |
| 23 | 1/7/2010 | M.A. | Maryland | $665.00 |

31. As a result of the foregoing fraudulent scheme, WALKER and his associates convinced more than 90 homeowners, residing in the Northern District of Ohio and elsewhere, to participate in TMG's loan modification program and to pay TMG more than $250,000.00 in fraudulently obtained fees.

All in violation of Title 18, United States Code, Section 1343.

## FOREFEITURE

The Grand Jury further charges:

For the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461(c), the allegations of Counts 1 through 23 are incorporated herein by reference. As a result of the foregoing offenses, defendant ROBERT WALKER shall forfeit to the United States any property real or personal, which constitutes or is derived from proceeds traceable to a violation of the charges set forth herein.

A TRUE BILL.

Original document -- Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.